**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
In re                                                          :
                                                               :     **Chapter 11**
**1380 Realty NY LLC,**                                        :
                                                               :     **Case No. 1-24-40017-ess**
                          Debtor.                              :
-------------------------------------------------------------X

## CERTIFICATION OF HARVEY ABRAHAMS IN SUPPORT OF DEBTOR'S MOTION TO DISMISS PETITION OR LIFT THE AUTOMATIC STAY TO ALLOW THE STATE COURT ACTION TO CONTINUE

**HARVEY ABRAHAMS**, under penalty of perjury pursuant to 17 U.S.C. § 1746, certifies as follows:

1. I am the managing member of 1971 60 Street, LLC ("1971"), the entity which serves as managing member of Plaintiff 1380 Realty NY, LLC. I submit this certification in support of the application by Debtor, through 1971, for an Order:

   a. Pursuant to 11 U.S.C. § 1112(b), dismissing the instant petition for cause, or, alternatively;

   b. Pursuant to 11 U.S.C. § 362(d), lifting the automatic stay imposed by the instant filing and allowing the State Court Action to proceed in all respects; and

   c. For such other and further relief as this Court may deem just and proper, including, but not limited to, an award of costs and fees for the improper filing.

2. I make this certification based upon my personal knowledge and personal review of the books and records of 1971, in the ordinary course of its business and in its possession and control. In connection with performing its duties, 1971 creates, receives, and maintains records in the regular course of such business pursuant to established procedures and practices for the routine, habitual, and systematic making of such records, including the documents attached to this affidavit.

All of the documents were received, created, or otherwise generated at or near the dates reflected on such documents.

**The Debtor Obtains The Property**.

3. On February 20, 2007, Yechezkel Kraut a/k/a Yechezkel Dov Kraut ("Yechezkel") and his wife, Shira Kraut ("Shira" and, together with Yechezkel, the "Krauts") took title to the the property located at 1971 60th Street, Brooklyn, New York 11204; Section 5514, Lot 49 (the "Property") by virtue of a Bargain and Sale Deed, from Giuseppe Arrisciato, as grantor, to the Krauts, as grantees (the "Initial Deed"). A true copy of the Initial Deed, recorded with the Office of the City Register of the City of New York (the "City Register") on April 17, 2007 (the "City Register's Office") as City Register File No. ("CRFN") 2007000196762, is annexed hereto as **Exhibit 1**.

4. On July 16, 2019, the Krauts formed debtor 1380 Realty NY, LLC ("1380") as a New York limited liability company, with each of the Krauts vested with a fifty percent (50%) membership interest therein as is memorialized in that certain Operating Agreement dated July 16, 2019 (the "Operating Agreement"). A copy of the Operating Agreement is annexed hereto as **Exhibit 2**.

5. To evidence the ownership of the Property required for an investment by my designee, the Krauts transferred all right, title, and interest in the Property to Debtor by virtue of a Bargain and Sale Deed with Covenant Against Grantor's Acts, dated July 19, 2019 (the "Debtor Deed"), which was recorded in the City Register's Office on September 24, 2019, as CRFN 2019000307563. A true copy of the Debtor Deed is annexed hereto as **Exhibit 3**.

**1971 Obtains 49% Of Debtor**.

6. By virtue of an Assignment of Membership Interest dated July 19, 2019 (the "Assignment"), Shira transferred forty-nine (49%) percent of her fifty (50%) percent membership interest in Debtor to 1971 and transferred her remaining one (1%) percent membership interest in Debtor to Yechezkel. A true copy of the Assignment is annexed as **Exhibit 4**.

7. In conjunction with the Assignment, Yechezkel and 1971 executed a First Amended Operating Agreement (the "First Amended OA") which governed the terms under which 1971 invested in and joined 1380. A copy of the First Amended OA is annexed hereto as **Exhibit 5**.

8. As reflected in the First Amended OA, Debtor's sole asset is the Property and the sole purpose of Debtor's creation was to own, develop, manage, operate, improve, finance, market, sell and otherwise deal with and dispose of the Property.

9. In the First Amended OA, Yechezkel and 1971 agreed, *inter alia*, that:

   a. Yechezkel would make preferred returns to 1971 in exchange for a capital contribution (the "Capital Contribution") by 1971;

   b. Upon a Default (as defined therein), *inter alia*, (i) the First Amended OA would be replaced with the Second Amended and Restated Operating Agreement (the "Second Amended OA"); (ii) 1971 would become the managing member of Debtor, with sole authority to make all major decisions of Debtor, including a sale or refinance of the Property; (iii) 1971 would be entitled to sell the Property and reap proceeds to recoup its Capital Contribution and Preferred Returns which are due and owing; and (iv) Debtor was prevented from filing for bankruptcy without the consent of 1971; and

   c. Debtor executed a Declaration of Restriction stating that it would not sell, mortgage, assign, lease, convey, transfer, encumber, pledge, hypothecate or otherwise take any action creating a security interest in the Property without the written consent of Judah A. Zelmanovitz or Neil Fink,

having an address of Fink & Zelmanovitz, P.C. (the "Declaration of Restriction") and agreed to record the Declaration of Restriction against the Property with the City Register's Office.

10. On September 24, 2019, the Declaration of Restriction was recorded in the City Register's Office against the Property as CFRN 2019000307564. A copy of the Declaration of Restriction is annexed hereto as **Exhibit 6**.

11. A copy of the Second Amended OA is annexed hereto as **Exhibit 7**.

12. The Second Amended OA echoed the default provisions from the First Amended OA with respect to changes in control over Debtor, the Property, and distributions of proceeds from any sale of the Property.

13. Specifically, if the Second Amended OA was enacted due to a default, Yechezkel and 1971 agreed, *inter alia*, that:

    a. 1971 would have the sole right to make all major decisions for Debtor, such as commence litigation, make insurance claims, or even wind-up the company;

    b. The day-to-day business and affairs of Debtor would be managed by 1971;

    c. 1971 would have the sole right to execute a sale of refinance of the Property and is explicitly authorized to unilaterally execute any documents needed to execute a sale or refinance of the Property;

    d. Yechezkel would indemnify and hold 1971 harmless from and against any and all claims, actions, demands, losses, liabilities, damages, costs, and expenses (including reasonable attorneys' fees) arising out of or relating to the Property and/or 1971's management of Debtor; and

    e. Distributions from Debtor, if any, would be re-prioritized to ensure that 1971 would first be repaid its Capital Contribution, exit fee, and accruing interest in the amount of 14% *per annum*, before any funds would be distributed to

> Yechezkel to safeguard 1971's investment in Debtor and payment of returns.

14. Significantly, at the time that the Debtor made the representations and covenants contained in the Assignment, the Declaration of Restriction, the First Amended OA, and the Second Amended OA, the Krauts had already taken steps to conceal the fact that the Property had been transferred to Yechezkel and his brother, Levi Kraut ("Levi"), for no consideration, and that additional encumbrances had been placed on the Property.

**The Fraud Is Revealed**.

15. A review of public records after the default revealed the depth of the fraudulent activities of the Krauts and Levi.

16. On or about June 26, 2019, while negotiations for 1971's investment in Debtor were on-going, the Krauts, as grantors, transferred the Property to Yechezkel and Levi, as grantees, for no consideration by a Warranty Deed with Full Covenants dated June 26, 2019 (the "Intervening Deed"). A true copy of the Intervening Deed is annexed hereto as **Exhibit 8**. The Intervening Deed was not recorded with the City Register until August 7, 2019.

17. Additionally, without notice to me, on July 18, 2019, again while negotiations for 1971's investment in Debtor were on-going, Yechezkel and Levi delivered a mortgage in the principal amount of $703,273.00, secured by the Property, in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for FM Home Loans (the "FM Mortgage"). The FM Mortgage also was not recorded with the City Register (CFRN 2019000249757) until August 7, 2019.

18. On July 18, 2019, the FM Mortgage was then consolidated with the existing mortgage on the Property into a single mortgage lien in the principal amount of $1,312,500.00 (the

"Consolidated Mortgage"). The Consolidation, Extension, and Modification Agreement (the "CEMA") was not recorded with the City Register (CFRN 2019000249758) until August 7, 2019.

19. As shown above, Yekezchel, Shira and Levi all conspired to transfer the Property and take an additional mortgage against the Property, to the detriment of Debtor, by making transfers with no consideration and granting mortgage liens against prior to July 19, 2019 and then failing to record such transactions and encumbrances until August 7, 2019, after the First Amended OA, with all of its material representations, was signed.

**1971 Becomes Managing Member Of Debtor Upon Kraut's Default**.

20. Subsequently, Yechezkel defaulted under the terms of the First Amended OA including, *inter alia*, failing to make preferred returns to 1971 in furtherance of the repayment of the Capital Contribution. A Notice of Default was sent on May 12, 2022, a copy of which is annexed hereto as **Exhibit 9**.

21. 1971 invoked its rights under the First Amended OA, whereupon the Second Amended OA replaced the First Amended OA and 1971 became the managing member of Debtor.

22. Due to his defaults under First Amended OA, Yechezkel is no longer the managing member of Debtor and did not have the right to take any corporate action on behalf of Debtor.

**1971 Commences The State Court Action To Recover The Property For Debtor**.

23. On February 23, 2023, 1971, on behalf of Debtor, commenced an action in the Supreme Court of the State of New York, Kings County, encaptioned *1380 Realty NY, LLC v. Yechezkel Kraut a/k/a Yechezkel Dov Kraut, Shira Kraut, Levi Kraut and Mortgager Electronic Registration Systems, Inc. as nominee for FM Home Loans, LLC.*, Index No. 505892/2023 (the "State Court Action"). The details and procedural history of the State Court Action are set forth in the accompanying Certification of Victor Rivera Jr., dated March 18, 2024, and will not be

discussed here, except to note that, in the State Court Action, 1971 has moved to recover the Property by invalidating the Intervening Deed and the FM Mortgage as fraudulently procured.

24. Throughout the State Court Action, Yechezchel has acted to thwart the efforts to recover the Property for Debtor, first, by claiming to be the Managing Member of Debtor, and then, purportedly on behalf of Debtor, filing a notice to discontinue the State Court Action against him and his co-conspirators with prejudice. A motion to strike this notice and additional motions for sanctions is *sub judice* and has been stayed by the present filing.

25. The instant filing is nothing more than an unauthorized attempt to delay the State Court Action and prevent the State Court from ruling on the fraud claims that have been asserted against him. The filing cannot change the facts, however, and those facts reveal that:

    a. Yechezchel was not authorized to put Debtor into bankruptcy;

    b. The instant matter is clearly a dispute between Yechezkel and Levi and 1971 that is, and should remain, a state court matter; and

    c. The only asset belonging to Debtor is property that was fraudulently transferred for no consideration from the Krauts to Yechezchel and Levi for no consideration and which is the subject of the State Court Action.

26. In short, the instant bankruptcy proceeding was filed by an unauthorized party and represents a dispute between two parties over a single entity that was already the subject of the State Court Action. Under those circumstances, it would be inequitable and damaging to the interests of the Debtor to allow the very person who has no interest in recovering the Property to file for bankruptcy and claim that the Property is not an asset of the Debtor.

## CONCLUSION

27. For all of the foregoing reasons, I respectfully request that this Court grant Plaintiff's Motion in its entirety, together with such other and further relief that the Court deems just and proper.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on March 18, 2024

                                              HARVEY ABRAHAMS