**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
In re                                                          :
                                                               :          Chapter 11
1380 Realty NY LLC,                                            :
                                                               :          Case No. 1-24-40017-ess
                                        Debtor.                :
-------------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR ORDER DISMISSING**
**THE PETITION OR, IN THE ALTERNATIVE,**
**LIFTING THE BANKRUPTCY STAY OF ACTIONS**
**AGAINST DEBTOR TO ALLOW FOR FURTHER**
<u>**PROCEEDINGS AGAINST THE DEBTOR IN STATE COURT**</u>


**R&R LEGAL ADVISORS LLC**
**28 Valley Road, Suite 1**
**Montclair, New Jersey 07042**
**(973) 594-2030**

**Attorneys for**
**1971 60th Street LLC**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................ 1

    The Property and the Formation of Debtor ............................................................................. 3

    The Agreement and the Amendment of the Operating Agreement ......................................... 3

    The Fraud ................................................................................................................................. 5

    The Defaults ............................................................................................................................. 7

    The State Court Action ............................................................................................................ 7

    The Filing of the Bankruptcy .................................................................................................. 8

ARGUMENT .......................................................................................................................... 9

    I.     THE PETITION SHOULD BE DISMISSED BECAUSE
           YECHEZKEL KRAUT WAS NOT AUTHORIZED TO
           FILE FOR BANKRUPTCY ON BEHALF OF DEBTOR ........................................ 9

    II.    THE PETITION SHOULD BE DISMISSED BECAUSE
           IT WAS FILED IN BAD FAITH ......................................................................... 11

    III.   ALTERNATIVELY, THE COURT SHOULD LIFT THE
           AUTOMATIC STAY TO ALLOW THE LONG-PENDING
           STATE COURT ACTION TO MOVE FORWARD TO
           DETERMINE 1971'S FRAUD AND PROPERTY
           RECOUPMENT CLAIMS FOR THE BENEFIT OF THE DEBTOR ...................... 15

        A.  Relief Would Result in a Complete Resolution of the Issues………………….....17
        B.  The State Court Action Includes Additional Third-Parties………………………..17
        C.  The Lifting of the Automatic Stay Would Not Prejudice Other Creditors…………..18
        D.  Any Judicial Lien Obtained in the State Court Action Would Not Be Avoidable…..18
        E.  The Interests of Judicial Economy Would Be Best Served by Lifting the Stay……..19
        F.  The Balance of Harms Favors Lifting the Stay………………………………….....19

CONCLUSION ....................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Acumen Re Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co.*, 2012 U.S. Dist. LEXIS 127809
(S.D.N.Y. Sept. 7, 2012) .................................................................................... 10

*Howard v. Howard*, 292 A.D.2d 345 (2nd Dep't 2002) ................................................. 9

*In re 167 W. 133rd St. Hous. Dev. Fund Corp.*, 2018 Bankr. LEXIS 2909
(Bankr. S.D.N.Y. 2018) ....................................................................................... 9

*In re 221-06 Merrick Blvd. Assoc's L.L.C.*,
2010 WL 5018265 (Bankr. E.D.N.Y. Dec. 3, 2010) ............................................ 17

*In re Am. Globus Corp.*, 195 B.R. 263 (Bankr. S.D.N.Y. 1996) ..................................... 9

*In re AMC Realty Corp.*, 270 B.R. 132 (Bankr. S.D.N.Y. 2001) ................................... 17

*In re Avalon Hotel Partners, LLC*, 302 B.R. 377 (Bankr. D. Or. 2003) ......................... 9

*In re BH S & B Holdings, LLC*, 439 B.R. 342 (Bankr. S.D.N.Y. 2010) ...................... 11

*In re Cohoes Indus. Terminal, Inc.*, 931 F.2d 222 (2nd Cir. 1991) ............................... 12

*In re C-TC 9th Ave. P'ship, 113 F.3d 1304* (2nd Cir. 1997)……………………………..12, 13

*In re G.A.F. Seelig, Inc.,* 2020 Bankr. LEXIS 706 (Bankr. E.D.N.Y. 2020) ................. 12

*In re GEL, LLC*, 2012 WL 3073069 (Bankr. E.D.N.Y. July 30, 2012) ......................... 11

*In re Gen. Growth Props., Inc.*, 409 B.R. 43 (Bankr. S.D.N.Y. 2009) ......................... 11

*In re Kingston Square Assocs.*, 214 B.R. 713 (Bankr. S.D.N.Y. 1997) ......................... 12

*In re Mazzeo*, 167 F.3d 139 (2nd Cir. 1999) ........................................................ 15, 16

*In re Sonnax Indus. Inc.*, 907 F.2d 1280 (2nd Cir. 1990) ................................... 15, 16, 17

*In re Squires Motel, LLC*, 426 B.R. 29 (N.D.N.Y. 2010) ............................................ 13

*In re Taub*, 427 B.R. 208 (Bankr. E.D.N.Y. 2010)) ..................................................... 11

*In re Taub*, 438 B.R. 39 (Bankr. E.D.N.Y. 2010) ......................................................... 16

*In re Touloumis*, 170 B.R. 825 (Bankr. S.D.N.Y. 1994) .............................................. 17

*In re Yukon Enters., Inc.*, 39 B.R. 919 (Bankr. C.D. Cal. 1984) ................................. 13

*Lamarche v. Miles*, 416 B.R. 53 (Bankr. E.D.N.Y. 2009) ............................................ 16

*Price v. Gurney*, 324 U.S. 100 (1945) .......................................................................... 9

*Thompson v. Gjivoje*, 896 F.2d 716 (2nd Cir. 1990) .................................................... 10

*W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157 (1990) ............................................. 10

*William C. Atwater & Co., v. Panama R.R. Co.*, 246 N.Y. 519 (1927) ....................... 10

**Statutes**

11 U.S.C. § 1112(b) ............................................................................................. *passim*

11 U.S.C. § 112(b)(4)……………………………………………………..…...12

11 U.S.C. § 362(d) ..................................................................................................... 15, 20

11 U.S.C. § 362(d)(1) .................................................................................................... 15

11 U.S.C. § 523(a)(2) .................................................................................................... 18

N.Y. CPLR § 3217(a)(2) ………………………………………………………...8

N.Y. Debtor and Creditor Law § 270, *et al*. .................................................................. 7

N.Y. Limited Liability Company Law, § 401(a) ........................................................... 9

## PRELIMINARY STATEMENT

The instant proceeding represents the opening of the newest battle front in an attempt by Yechezkel Kraut ("Yechezkel"), who claims to be the sole member of the debtor, 1380 Realty LLC ("Debtor"), and others[1] to defraud 1971 60th St. LLC ("1971") with respect to investments made by 1971 to Debtor for the purpose of owning, developing, managing, operating, improving, financing, marketing, selling and otherwise dealing with and disposing of the property known as 1971 60th St., Brooklyn, New York (the "Property"). As demonstrated in more detail below, Yechezkel, purportedly on behalf of Debtor, hid the transfer of the Debtor's sole asset (the Property) for no consideration to himself and his brother (Levi) to obtain financing from 1971 and other mortgage loans against the Property and has, since discovery of the fraud, tried to delay and frustrate 1971's attempts to recover the Property and invalidate the mortgage on behalf of Debtor by, *inter alia*:

1. Ignoring Debtor's default under the loan documents and claiming to still be the sole member of Debtor;

2. Interfering with and obstructing the action for fraud and restitution (in the form of, *inter alia*, the return of the Property to Debtor) filed by Debtor, through its true sole member, 1971, in Supreme Court, Kings County, Index No. 505892/2023, encaptioned *1380 Realty NY, LLC v. Yechezkel Kraut a/k/a Yechezkel Dov Kraut, Shira Kraut, Levi Kraut and Mortgage Electronic Registration Systems, Inc. as nominee for FM Home Loans, LLC* (the "State Court Action") by, *inter alia*, filing false documents claiming to be the sole member of Debtor and

---

[1] Others involved in the fraudulent attempt to transfer the Property and obtain financing and mortgages via deceptive means are Shira Kraut, Yechezkel's wife ("Shira"), Levi Kraut, Yechezkel's brother ("Levi"), and Mortgage Electronic Registration Systems, Inc. ("MERS") as sole nominee for FM Home Loans, a corporation that aided and abetted Yechezkel, Shira and Levi in transferring the Property for no consideration from the Debtor to Yechezkel and Levi and failing to record the alleged transaction of record until after obtaining financing from third-parties on the grounds that Debtor owned the Property.

seeking to "voluntarily" dismiss the case against him and his co-conspirators;[2]

3.  Obtaining a separate attorney on the eve of the return date for the OSC filed by 1380 to vacate the false voluntary dismissal and then using that second counsel to further adjourn the OSC and file untimely papers thereafter; and

4.  Authorizing the bankruptcy filing as an alleged sole member of the Debtor without taking adequate corporate action.

In short, Yechezkel is attempting to use this Court to take a dispute between him and 1971 over the Property and use the Bankruptcy Court as a shield by inserting the Debtor in the middle.[3] However, the Court should see through the charade and recognize this filing for what is: a desperate tactic by an individual owning a single asset with a single creditor and trying to avoid the State Court Action by involving the Court to determine a two-party dispute that "could be fully resolved in a non-bankruptcy forum" and where the primary function of the petition was to serve as a "litigation tactic." *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1309-10 (2nd Cir. 1997)

This brazen abuse of the Bankruptcy Court should be denied.

---

[2] Debtor, through 1971, has moved by Order to Show Cause in the State Court Action for the entry of an Order striking the alleged voluntary dismissal, removing the alleged substitute attorney who filed the improper Consent to restore the attorney retained by 1971 to recover the Property, and sanctioning Kraut and the attorneys for a bad-faith filing (the "OSC"). The motion is *sub judice*, but subject to the automatic stay.

[3] In order to understand the Byzantine nature of Yechezkel's machinations, the Court should understand that the filing of the instant proceeding stayed a State Court Action brought to recover property that should belong to Debtor and otherwise reduce the liabilities of the Debtor! The sole entities profiting from the automatic stay herein are Yechezkel and Levi, who hold the Property that should be Debtor's and benefitted from the improper mortgage loans taken out in Debtor's name.

## STATEMENT OF FACTS

The material facts relevant to the disposition of the instant matters are fully set forth in detail in the accompanying Certifications of Harvey Abrahams, the managing member of 1971, dated March 19, 2024 ("Abrahams Cert."), and Victor Rivera Jr., Esq., dated March 19, 2024 ("Rivera Cert."), and need not be fully restated herein. The following is a summary recitation of facts for the Court's convenience.

### The Property and the Formation of Debtor.

On February 20, 2007, Yechezkel and Shira (collectively, the "Krauts"), as husband and wife, took title to the Property by virtue of a Bargain and Sale Deed, from Giuseppe Arrisciato, as grantor, to the Krauts, as grantees (the "Initial Deed"). A true copy of the Initial Deed, recorded with the Office of the City Register of the City of New York (the "City Register") on April 17, 2007 (the "City Register's Office") as City Register File No. ("CRFN") 2007000196762, is attached as Exhibit 1 to the Abrahams Cert.

On July 16, 2019, in connection with negotiations being conducted between Yechezkel and Mr. Abrahams in 1971 would invest in and provide capital to Debtor, the Krauts formed Debtor as a New York limited liability company, with each of the Krauts as a 50% membership interest holder, as memorialized in an Operating Agreement dated July 16, 2019 (the "Operating Agreement"). A true copy of the Operating Agreement is attached as Exhibit 2 to the Abrahams Cert.

As reflected in the Operating Agreement, Debtor's sole asset was listed as the Property and the sole purpose of Debtor's creation was to own, develop, manage, operate, improve, finance, market, sell and otherwise deal with and dispose of the Property.

**The Agreement and the Amendment of the Operating Agreement**.

To evidence the ownership of the Property required for the investment by Mr. Abraham's designee, the Krauts transferred all right, title, and interest in the Property to Debtor by virtue of a Bargain and Sale Deed with Covenant Against Grantor's Acts, dated July 19, 2019 (the "Debtor Deed"), which was recorded in the City Register's Office on September 24, 2019, as CRFN 2019000307563. A true copy of the Debtor Deed is attached as Exhibit 3 to the Abrahams Cert.

Simultaneously with the assignment of the Property to the Debtor, Shira transferred 49% percent of her 50% percent membership interest in Debtor to 1971 and transferred her remaining one (1%) percent membership interest in Debtor Yechezkel via an Assignment of Membership Interest dated July 19, 2019 (the "Assignment"). A true copy of the Assignment is attached as Exhibit 4 to the Abrahams Cert.

Also on July 19, 2019, Yechezkel and 1971 executed a First Amended and Restated Operating Agreement of 1380 Realty NY LLC (the "First Amended OA"). A true copy of the First Amended OA is attached as Exhibit 5 to the Abrahams Cert.

In the First Amended OA, Yechezkel and 1971 agreed, *inter alia*, that:

    a.    Debtor reiterated that its sole asset was the Property and that the Debtor's corporate purpose was to own, develop, manage, operate, improve, finance, market, sell and otherwise deal with and dispose of the Property. Abrahams Cert., Exh. 5, ¶ 4;

    b.    1971 would have a 49% membership interest in Debtor. *Id.*, ¶ 5;

    c.    Yechezkel, as Sponsor, would handle day-to-day management of the affairs of Debtor, **but could not initiate the filing of a bankruptcy petition and any such petition filed by him would be null and void**. *Id.*, ¶ 5(a) (emphasis added);

d.      Debtor could not take any mortgage loans other than those identified in the First Amended OA. *Id.*, ¶ 8;

e.      Yechezkel would make preferred returns to 1971 in exchange for a capital contribution of $600,000.00 (the "Capital Contribution") by 1971. *Id.*, ¶¶ 7, 9;

f.      Upon a Default (as defined therein), *inter alia*, (i) the First Amended OA would be replaced with the Second Amended and Restated Operating Agreement (the "Second Amended OA");[4] (ii) 1971 LLC would become the sole member of Debtor and, thus, the sole owner of the Property; and (iii) 1971 LLC would be entitled to sell the Property and recoup its Capital Contribution. *Id.*, ¶¶ 6(b), 10(c); and

g.      Debtor executed a Declaration of Restriction stating that it would not sell, mortgage, assign, lease, convey, transfer, encumber, pledge, hypothecate or otherwise take any action creating a security interest in the Property without the written consent of Judah A. Zelanovitz or Neil Fink, having an address of Fink & Zelmanovitz, P.C. (the "Declaration of Restriction") and agreed to record the Declaration of Restriction against the Property with the City Register's Office.[5]

**The Fraud**.

Incredibly, at the time of the closing of the transaction, and in direct contrast to the representations made to 1971, Debtor did not own the Property and had already further encumbered the Property beyond the two mortgages identified in the First Amended OA. Abrahams Cert., ¶¶ 15 - 19.

Indeed, public records show that, on or about June 26, 2019, the Krauts, as grantors, had transferred the Property to Yechezkel and Levi, as grantees, by a Warranty Deed with Full

---

[4]   A true copy of the Second Amended OA is attached as Exhibit 7 to the Abrahams Cert.

[5]   A true copy of the Declaration of Restriction, filed with the City Register on September 24, 2019 as CFRN 2019000307564 is attached as Exhibit 6 to the Abrahams Cert.

Covenants dated June 26, 2019 (the "Intervening Deed"). A true copy of the Intervening Deed is attached as Exhibit 8 to the Abrahams Cert. Upon information and belief, such transfer was a made without consideration or for nominal consideration and not for any value that would have resulted in a benefit to Debtor.

Additionally, on July 18, 2019, Yechezkel and Levi, as purported owners of the Property, delivered a mortgage in the amount of $703,273.00 to MERS, which mortgage was not revealed and/or listed on the Amended First OA (the "Additional Mortgage"). Also on July 18, 2019, Yechezkel and Levi, as purported owners of the Property, executed a Consolidation, Extension, and Modification Agreement (the "CEMA") wherein and all existing mortgages on the Property were consolidated into a single mortgage lien, in the original principal amount of $1,312,500.00 (the "Consolidated Mortgage"), against the Property. The Consolidated Mortgage was also not revealed and/or listed on the Amended First OA.

To ensure that 1971 did not become aware of the transfer of the Property and the additional mortgage encumbrance on the Property prior to the closing date of their own acceptance of an assignment of a 49% interest in Debtor in exchange for an infusion of at least $600,000, Yechezkel and Levi delayed recording the Intervening Deed in the City Register's Office (CRFN 2019000249754), and the Additional Mortgage (CRFN 2019000249757) and the CEMA (CRFN 2019000249578) were not recorded in the City Register's Office until August 7, 2019 – almost two months after the transfer of the Property to Yechezkel and Levi and three weeks after it had received its funding from 1971 based on the representations of Property ownership set forth in the First Amended OA.

**The Defaults**.

After obtaining the money called for by the agreement, Debtor, despite demands therefor, failed to make the preferred distributions, or make the repayment of the amount by the deadline. Additionally, 1971 became aware of the fraudulent transactions that preceded the agreement between Debtor and 1971. Abrahams Cert., ¶¶ 15 - 19.

On May 12, 2022, 1971 issued a Notice of Default to the Debtor based on the encumbrance of the Property by the mortgages as well as the failure to make preferred returns to 1971 LLC (collectively, the "Defaults") and invoked its rights under the First Amended OA to become the sole member of the Debtor. A true copy of the Default Letter is attached as Exhibit 9 to the Abrahams Cert.

**The State Court Action**.

On February 23, 2022, Debtor, through counsel engaged by 1971, commenced an action against Yechezkel, Shira and Levi, among others, seeking the return of the Property and for damages resulting from the fraudulent transfer of the Property. A true copy of the Complaint, alleging causes of action sounding in fraud, civil conspiracy to defraud, breach of fiduciary duty, breach of warranty of title, and violation of New York's Uniform Voidable Transactions Act (N.Y. Debtor and Creditor Law § 270, et al.), and seeking damages for fraud and the setting aside the Intervening Deed and the mortgages obtained in violation of the covenants contained in the Declaration of Restriction. A true copy of the Complaint filed in the State Court Action is attached as Exhibit 10 to the Rivera Cert.

While Shira has answered the Complaint, neither Yechezkel, nor Levi has answered, nor have they sought to extend their time to answer. Rather, in a blatant attempt to delay and

frustrate 1971, Yechezkel, despite having no authority under either the First or Second Operating Agreement to make any corporate decisions without the consent of 1971, purported to engage a different attorney on behalf of Debtor to file a voluntary consent to dismiss the State Court Action with prejudice. On or about July 31, 2023, 1971's attorneys filed a letter requesting that the stipulation be stricken by the Court as unauthorized. A true copy of the letter is attached hereto as Exhibit 11 to the Rivera Cert.

In response to the filing, the attorneys engaged by 1971 to act on behalf of Debtor filed the OSC to invalidate the filing as both procedurally improper[6] and filed in bad faith without the authority of the sole managing member, 1971. A true copy of the OSC request is attached as Exhibit 12 to the Rivera Cert. At this time, both sides have asserted cross-motions for sanctions against the other, and the motion has been orally argued. 1971 fully expects that the fraudulent voluntary dismissal will be voided by the Court and the case allowed to proceed upon the lifting of the stay.

**The Filing of the Bankruptcy**.

On January 3, 2024, almost one year after the State Court Action was filed, and after oral arguments on the OSC were heard, Yechezkel, fraudulently purporting to be the sole member of Debtor, filed the instant Petition.

The instant motion followed.

---

[6]  Per the civil practice rules of the Courts of New York (CPLR § 3217(a)(2)), once an appearance has been made in an action, said action cannot be voluntarily dismissed absent the written consent of all parties. No such stipulation was filed herein. Rivera Cert., ¶ 9.

**ARGUMENT**

**I.**

**THE PETITION SHOULD BE DISMISSED BECAUSE
YECHEZKEL KRAUT WAS NOT AUTHORIZED
TO FILE FOR BANKRUPTCY ON BEHALF OF DEBTOR**

It is well settled that the lack of authority to file a voluntary bankruptcy petition constitutes an independent ground for "cause" for relief under Section 1112(b) of the Bankruptcy Code (11 U.S.C. §1112(b)). *In re 167 W. 133rd St. Hous. Dev. Fund Corp.*, 2018 Bankr. LEXIS 2909, *14 (Bankr. S.D.N.Y. 2018) (citations omitted). Even a cursory look at the relevant documents herein reveal that Yechezkel was no longer capable of legally taking any action on the part of the Debtor at the time of the filing of the Petition.

Only the entity vested with "the power of management" has the requisite authority to file a bankruptcy petition. *Price v. Gurney*, 324 U.S. 100, 104 (1945). State law governs whether a business entity is authorized to file a petition in bankruptcy. *In re Am. Globus Corp.*, 195 B.R. 263, 265 (Bankr. S.D.N.Y. 1996); *In re Avalon Hotel Partners, LLC*, 302 B.R. 377, 380 (Bankr. D. Or. 2003). Debtor is a New York limited liability company, and resolution of this issue is therefore governed by New York state law.

Under the New York Limited Liability Company Law ("N.Y. LLC"), the Debtor's operating agreement governs the parties' conduct. N.Y. LLC § 401(a). Thus, interpretation of the Operating Agreement is governed by several principles of basic New York contract law:

1. When the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving practical interpretation to the language employed and the parties' reasonable expectations. *Howard v. Howard*, 292 A.D.2d 345, 345 (2nd Dep't 2002);

2. "Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible

to add or vary the writing." *W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990);

3. A court should accord contractual language its plain meaning while considering the surrounding circumstances apparent purpose of the parties. *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2nd Cir. 1990) (*quoting William C. Atwater & Co., v. Panama R.R. Co.*, 246 N.Y. 519, 524 (1927));

4. A written agreement that is clear, complete and subject to only one reasonable interpretation must be enforced according to its plain meaning. *Acumen Re Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co.*, 2012 U.S. Dist. LEXIS 127809, 2012 WL 3890128, at *5 (S.D.N.Y. Sept. 7, 2012 (citation omitted)).

In the instant matter, the corporate affairs of Debtor were governed by Operating Agreement, as amended by both the First Amended OA and Second Amended OA thereto.

Quite simply, the plain and clear language of the First and Second Amended OAs is dispositive of the issue of Yechezkel's alleged authority to file for bankruptcy on behalf of Debtor.

Pursuant to Section 5(a) of the First Amended OA, Yechezkel **could not initiate the filing of a bankruptcy petition and any such petition filed by him would be null and void**. Abrahams Cert., Exh. 5, ¶ 5(a) (emphasis added). There can be no clearer statement of the intent of the parties than this unequivocal agreement that Yechezkel could not, on his own, initiate any bankruptcy proceeding. On the basis of this language alone, the Petition should be dismissed for cause as a bad faith filing.

While the First Amended OA should be dispositive of the issue, the language of the Second Amended OA, which took force after the Defaults were declared, is equally compelling. Pursuant to the language of the Second Amended OA, "the day to day business affairs of the Company shall be managed by 1971" (Abrahams Cert., Exh. 6, ¶ 6(a)) and 1971 "shall have the sole right to make all major decisions for the [Debtor]" (*Id*., ¶ 6(b)). Thus, upon declaration of the defaults, all decision-making power for Debtor devolved to 1971 by the express agreement of the parties.

The clear and unambiguous language of both Amended Operating Agreements makes plain that there is only one reasonable interpretation of the Amended Operating Agreements: after 1971 made a capital contribution of $600,000 under the Agreement, no bankruptcy could be declared without the approval of 1971. No such approval was given by 1971. Abrahams Cert., ¶ 25.

In sum, as Yechezkel had no authority under Debtor's Operating Agreement to declare bankruptcy, the instant proceeding should be dismissed for cause.

## II.

## THE PETITION SHOULD BE DISMISSED BECAUSE IT WAS FILED IN BAD FAITH

Section 1112(b) of the Bankruptcy Code, 11 U.S.C. § 1112(b), provides that "on request of a party in interest, and after notice and a hearing, the court shall convert a [Chapter 11] case to a case under Chapter 7 or dismiss [it], whichever is in the best interests of creditors and the estate," if the movant establishes cause. In evaluating a motion made under this Section, the movant has the burden of demonstrating cause by a preponderance of the evidence. *In re GEL, LLC*, 2012 WL 3073069 (Bankr. E.D.N.Y. July 30, 2012) (*citing In re Taub*, 427 B.R. 208, 231 (Bankr. E.D.N.Y. 2010)). In analyzing a motion to dismiss, "a bankruptcy court has wide discretion to determine whether cause exists and, if cause is present, to decide whether to convert the case to one under Chapter 7 or to dismiss." *Id.* (*citing In re BH S & B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010)).

While Section 1112(b)(4) identifies examples of cause, courts have further recognized an implicit requirement that a chapter 11 case be filed in good faith. *See In re Gen. Growth Props., Inc.*, 409 B.R. 43, 56 (Bankr. S.D.N.Y. 2009). In the Second Circuit, grounds for dismissal exist where, on the filing date, "there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings." *In*

*re C-TC 9th Ave. P'ship*, 113 F.3d at 1309-10 (*quoting In re Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 227 (2nd Cir. 1991)); *see also In re Kingston Square Assocs.*, 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997) ("a bankruptcy petition will be dismissed if both objective futility of the reorganization and subjective bad faith in filing the petition are found").

In *C-TC 9th Ave. P'ship*, the Second Circuit outlined the following factors as indicative of a bad faith filing that would rise to cause for dismissal:

1.  The Debtor has only one asset;

2.  The Debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

3.  The Debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

4.  The Debtor's financial condition is, in essence, a two-party dispute between the Debtor and secured creditors which can be resolved in the pending state foreclosure action;

5.  The timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

6.  The Debtor has little or no cash flow;

7.  The Debtor can't meet current expenses including the payment of personal property and real estate taxes; and

8.  The Debtor has no employees.

*In re G.A.F. Seelig, Inc.,* 2020 Bankr. LEXIS 706, 2020 WL 1486785, at *14 (Bankr. E.D.N.Y. 2020) *(quoting C-TC 9th Ave. P'ship*, 113 F.3d. at 1311).

In applying the *C-TC* factors, no one factor is determinative of good faith and, "[i]t is the totality of circumstances, rather than any single factor, that will determine whether good faith exists." *In re Kingston Square Assocs.*, 214 B.R. at 725; *see also In re C-TC 9th Ave. P'ship*, 113 F.3d at 1312 (indicating that a finding of bad faith "requires a full examination of all the

circumstances of the case" and is "a highly factual determination").

Once the movant has established both subjective bad faith and objective futility, "a rebuttable presumption of bad faith arises and the burden shifts to the debtor to 'establish good and sufficient reasons why the relief should not be granted.'" *In re Squires Motel, LLC*, 426 B.R. 29, 34 (N.D.N.Y. 2010) (*quoting In re Yukon Enters., Inc.*, 39 B.R. 919, 921 (Bankr. C.D. Cal. 1984)).

A review of the C-TC factors clearly shows that the instant filing should be dismissed because:

1. As shown above, it was filed in bad faith by Yechezkel, a party who had no authority to file the Petition on behalf of the Debtor;

2. Debtor has only one asset: the Property;

3. Debtor has only one creditor: 1971;[7] and

4. The primary reason for the instant filing was to stay the State Court Action, which was seeking, *inter alia*, to recover the Property, which Yechezkel claims to own.

In *In re C-TC 9th Avenue Partnership*, the Second Circuit affirmed a dismissal for cause under 11 U.S.C. § 1112(b) where the filing was the latest move in a two-party dispute that "could be fully resolved in a non-bankruptcy forum" and where the primary function of the petition was to serve as a "litigation tactic." 113 F.3d at 1309-10. A similar outcome should be the result here.

The instant filing is nothing more that a last-ditch attempt to avoid the consequences of the upcoming, and presently stayed, decision in the State Court Action that would finally end Yechezkel's dilatory tactics, force him to defend the multiple fraud allegations against him and

---

[7] While the Petition filed by Yechezkel also names Harvey Abrahams, Ira Burstein and MSF Lending LLC as additional possible creditors, all of those entities are related: Mr. Abrahams is the managing member of 1971, Mr. Burstein is his business partner and MSF Lending is a business entity of which Mr. Abrahams is the sole member.

others, and allow an action that would result in the return of assets to the Debtor and reduce the liabilities of Debtor by disaffirming mortgages that were placed on the Property without 1971's required consent.

Reviewing the facts reveals the interesting position that Yechezkel is attempting to assert in this proceeding: he claims to be the sole member of the Debtor acting in the Debtor's best interests, but his actions show that is only trying to protect his own interest at the Debtor's expense. At a minimum, the Court should be aware of the following inconsistencies in Yechezkel's behavior and timing as it pertains to the best interests of the Debtor:

1. Why did Yechezkel conceal the transfer of the Property from 1971 before executing Operating Agreements that both spelled out that ownership of the Property was one of Debtor's purposes and warranted that Debtor had title to the Property?;

2. Why did Yechezkel conceal that he and Levi had obtained additional mortgages from 1971 when executing Operating Agreements that said that no further encumbrances would be placed on the Property without 1971's consent?; and

3. Why did Yechezkel wait for more than 18 months after the declaration of the Defaults and the triggering of the Second Amended OA to file the instant proceeding?

Other questions as to the timing and propriety of Yechezkel's actions exist and can be inferred from the facts and arguments raised above, but they all would trigger a similar response: Yechezkel has always acted in his own self-interest and not in the best interests of the Debtor and his primary tactic to avoid scrutiny of his actions has been to bluster, delay and literally turn a limited dispute between two parties into a Federal Action. Indeed, one would be hard-pressed to state how Yechezkel is acting in Debtor's best interest by intervening as an alleged sole member to try to dismiss with prejudice claims that would result in restoring the Property to Debtor and reduce the size of the mortgage encumbrances on the Property!

In short, there can be no question that the instant filing was made by Yechezkel in bad faith and for an ulterior purpose – the delay of the State Court Action's review of his fraudulent activities regarding the Property – and that the instant Petition should be dismissed as a matter of law.

**III.**

**ALTERNATIVELY, THE COURT SHOULD LIFT THE AUTOMATIC STAY TO ALLOW THE LONG-PENDING STATE COURT ACTION TO MOVE FORWARD TO DETERMINE 1971'S FRAUD AND PROPERTY RECOUPMENT CLAIMS FOR THE BENEFIT OF THE DEBTOR**

Assuming, arguendo, that dismissal of the Petition is not warranted, a determine which 1971 believes would be erroneous, 1971 seeks relief from the automatic stay under Section 362(d)(1) of the Bankruptcy Code, 11 U.S.C. § 362(d)(1), so that it may pursue the State Court Action, which has been pending for over a year, to final judgment.

Section 362(d)(1) authorizes the Court to lift the automatic stay "for cause, including lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define "cause," rather, courts analyze cause on a case-by-case basis.

"The burden of proof on a motion to lift or modify the automatic stay is a shifting one" and rests initially on the moving party to make a showing of "cause" for relief. *In re Sonnax Indus. Inc.*, 907 F.2d 1280, 1285 (2nd Cir. 1990); *In re Mazzeo*, 167 F.3d 139, 142 (2nd Cir. 1999). In the event "the movant fails to make an initial showing of cause ... the court should deny relief without requiring a showing from the debtor that it is entitled to continued protection." *In re Sonnax Indus.*, 907 F.2d at 1285.

Ultimately, whether to grant relief from the automatic stay is a matter left to the Court's discretion. *Id*.

Traditionally, the Second Circuit has 12 factors for courts to consider when determining the existence of cause for stay relief to allow prepetition litigation to continue:

1.　　Whether relief would result in a partial or complete resolution of the issues;

2.　　Lack of any connection with or interference with the bankruptcy case;

3.　　Whether the other proceeding involves the debtor as a fiduciary;

4.　　Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

5.　　Whether the debtor's insurer has assumed full responsibility for defending it;

6.　　Whether the action primarily involves third parties;

7.　　Whether litigation in another forum would prejudice the interests of other creditors;

8.　　Whether the judgment claim arising from the other action is subject to equitable subordination;

9.　　Whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

10.　　The interests of judicial economy and the expeditious and economical resolution of litigation;

11.　　Whether the parties are ready for trial in the other proceeding; and

12.　　Impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus. Inc.*, 907 F.2d at 1286.

"[T]he court need not give equal weight to each factor." *In re Taub*, 438 B.R. 39, 45 (Bankr. E.D.N.Y. 2010) (*citing Lamarche v. Miles*, 416 B.R. 53, 58 (Bankr. E.D.N.Y. 2009)). Additionally, "[n]ot all of these factors will be relevant in every case." *In re Mazzeo*, 167 F.3d at 143 (2nd Cir.

1999). Thus, in deciding whether to grant stay relief to permit a creditor to continue litigation in another forum, the court should consider the "particular circumstances of the case, and ascertain what is just to the claimants, the debtor and the estate." *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994).

Quite simply, given that 1971 has already made a case for dismissal for cause under 11 U.S.C. § 1112(b), a consideration of the relevant *Sonnax* factors warrants relief from the automatic stay. *In re Sonnax Indus.*, 907 F.2d 1280 ("[T]he factors for the Court to consider when determining bad faith as cause to terminate the automatic stay under Section 362(d)(1) are the same as the factors used by the Court to determine cause for dismissal of a case under Section 1112(b).")). *See In re 221-06 Merrick Blvd. Assoc's L.L.C.*, 2010 WL 5018265 at *4 (Bankr. E.D.N.Y. Dec. 3, 2010) (*citing In re AMC Realty Corp.*, 270 B.R. 132, 141 (Bankr. S.D.N.Y. 2001). Thus, relief from the stay should be granted.

If required to review the individual grounds again, a review of the relevant *Sonnax* Factors demonstrates that the automatic stay should be lifted to allow for the State Court Action to move forward:

**A.** **Relief Would Result in a Complete Resolution of the Issues**.

The State Court Action seeks, on behalf of Debtor, the disposition of fraud claims related to the Debtor's sole asset and involving the Debtor's sole stated creditors in the Petition. Thus, there would be a complete disposition of the issues raised in the instant bankruptcy proceeding. Accordingly, this factor weighs in favor of relief from the automatic stay.

**B.** **The State Court Action Includes Additional Third Parties**.

In the State Court Action additional third parties, including Yechezkel's wife, Shira, and Yechezkel's brother, Levi, as well as the mortgage entity facilitating the fraudulent transfer of the

Property,[8] are all involved in the claims for fraud and civil conspiracy to defraud the Debtor. Clearly, Yechezkel, in his alleged capacity as the sole member of the Debtor, would have no interest in pursuing claims against his wife, brother and the entity that gave him a mortgage presumably secured by the Property. Again, this factor weighs in favor of lifting the stay.

**C. <u>The Lifting of the Automatic Stay Would Not Prejudice Other Creditors</u>.**

Quite simply, no other creditors are identified in the Debtor's Schedules that do not already have a relationship with Mr. Abrahams and 1971. Thus, their interest would not be prejudiced by lifting the stay to allow the matter to go forward. As with the other factors, this mitigates in favor of lifting the automatic stay.

**D. <u>Any Judicial Lien Obtained in the State Court Action Would Not Be Avoidable</u>.**

Pursuant to 11 U.S.C. § 523(a)(2), no discharge from bankruptcy can be claimed for debts related to any property or transaction obtained by "false pretenses, a false representation, or actual fraud". As shown above, the clearly stated object of the State Court Action is to recover the Property and vitiate any liability of Debtor through mortgages obtained because of fraudulent misrepresentations made by Yechezkel to 1971, on behalf of Debtor, that Debtor owned the Property and the only encumbrances on the Property were as set forth in the First Amended OA. These false representations were made to procure a capital investment in Debtor by 1971 and the documentation which would have shown that the representations were false not filed until six weeks after the First Amended OA was filed and the capital contribution made by 1971.

Accordingly, should the State Court Action proceed, no judgment procured pursuant to the fraud and conspiracy to defraud claims would be avoidable in a bankruptcy proceeding. This factor

---

[8] Technically, since Yekezchel is sued for fraud in an individual capacity, he too is a third-party participating in the State Court Action.

also mitigates in favor of lifting the stay.

**E.  The Interests of Judicial Economy Would Be Best Served By Lifting the Stay.**

It is in the best interests of all concerned to allow 1971 to continue its efforts to seek the return of the Debtor's Property in the State Court Action, instead of allowing a conflicted party claiming to own the Property individually to proceed to delay, and dismiss with prejudice, a fraud action against him and others not involved in the Bankruptcy, while purportedly acting in the best interests of the Debtor.

The State Court has already dealt with multiple instances of dilatory conduct by Yechezkel in the State Court Action, which actions have left him, and both of his attorneys, as the subjects of motions for contempt that the State Court has heard oral argument on and is poised to issue a decision on. He should not be allowed to reset the clock by virtue of a new and bad faith bankruptcy filing at the very moment when the State Court Action is expected to call him to account for his dilatory conduct and manifest disregard for the truth.

**F.  The Balance of Harms Favors Lifting of the Stay.**

There is no question but that lifting the stay would be in the best interests of the Debtor. If the automatic stay is lifted, 1971 will continue to pursue a claim to recover the Property for 1971 and reduce the indebtedness on the Property. While this sounds like something that can easily be seen as a boon for the Debtor, Yekezchel, pursuing his own self-interest, is using the Bankruptcy Court to stop the State Court Action's review of his fraudulent deeds and stay motions for contempt made in response to other fraudulent actions taken by him and his representatives in the State Court.

While lifting the stay may not be in the best interest of Yekezchel, he is not the Debtor, and his unwillingness to take action on behalf of the Debtor to recover the Property reveals the

true intention of his last-minute filing: to start the clock anew in a new action after delaying the state Court Action as long as he could and to avoid a likely contempt citation for the positions taken therein.

In contrast, if the stay is not granted, 1971's fraud claims, which are not dischargeable in any event, will be delayed further and 1971, the only entity seeking to act in the best interests of the Debtor, will have to start all over again and delay actions to recover the Property that Yechezkel has no interest in pursuing because of the negative impact on his own personal interests and that of his brother.

In sum, the instant filing is merely the latest move by Yechezkel in a two-party dispute that could be fully resolved in the State Court Action and a litigation tactic to frustrate the State Court's ability to render a decision on both his ability to act as the alleged sole member of the Debtor and to evade the consequences of a likely adverse determination on contempt motion against him and his attorneys. As such, the stay should be lifted for cause.

## CONCLUSION

For the reasons set forth above, this Court should issue an Order:

A.     Pursuant to 11 U.S.C. § 1112(b), dismissing the instant petition for cause, or, alternatively,

B.     Pursuant to 11 U.S.C. § 362(d), lifting the automatic stay imposed by the instant filing and allowing the State Court Action to proceed in all respects; and

B.     For such other and further relief as this Court may deem just and proper, including, but not limited to, an award of costs and fees for the improper filing.

Dated: May 1, 2024
         New York, New York

Respectfully submitted,

R&R LEGAL ADVISORS LLC

By:_____/s/ Victor Rivera Jr._____
        Victor Rivera Jr.
        Christopher M. Rodriguez
28 Valley Road, Suite 1
Montclair, New Jersey 07042
(973) 662-4550
vrivera@rrlegal.net

*Attorneys for 1971 60th Street LLC, Harvey*
*Abrahams, Ira Burstein and MSF Lending LLC*